UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

LARRY TUBBS, ET AL.                    CIV. ACTION NO. 3:21-03268

VERSUS                                 JUDGE TERRY A. DOUGHTY

AGSPRING MISSISSIPPI                   MAG. JUDGE KAYLA D. MCCLUSKY
REGION, L. L. C., ET AL.

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are the following motions:   1) motion to abstain and for remand, plus an associated request for costs, expenses, and fees [doc. # 2] filed by Plaintiffs Larry Tubbs; Tubbs Rice Dryers, Inc.; Chief Ventures, L.L.C.; and Big River Grain, L.L.C.; 2) motion to transfer venue [doc. # 6] filed by Defendant, Pacific Investment Management Company, L.L.C.; and 3) motion to transfer [doc. # 9] filed by Defendants, Agspring Mississippi Region, L.L.C.; Agspring, L.L.C.; Agspring Holdco, L.L.C.; and Lake Providence Rice & Grain, L.L.C.   The motions are opposed. For reasons set forth below, it is recommended that the motion to abstain and remand be DENIED and that the motions to transfer be GRANTED.

Background

On September 30, 2019, Plaintiffs Larry Tubbs; Tubbs Rice Dryers, Inc.; Chief Ventures, L.L.C.; and Big River Grain, L.L.C. (collectively referred to in the singular as "Tubbs") filed the instant lawsuit against a host of defendants in the Sixth Judicial District Court for the Parish of Madison, State of Louisiana.   (Petition).   Tubbs filed an amended petition on December 9, 2019, which, from what the court may discern, represents the most recent and operative complaint in the matter.   *See* First Amended and Restated Petition [doc. # 1-2] (hereinafter

referred to as "Complaint" or "Compl.").

According to the Complaint, Larry Tubbs was the president and a stockholder of Tubbs Rice Dryers, Inc. and a member of both Chief Ventures, L.L.C. and Big River Grain, L.L.C. (Compl., ¶ 5).   Tubbs owned and operated a grain elevator business with facilities in Mer Rouge and Pioneer, Louisiana.   *Id.*, ¶ 6.   Effective June 26, 2013, Tubbs sold the Mer Rouge and Pioneer facilities and other assets to Agspring Mississippi Region, L.L.C. ("AMR") in exchange for a $7 million note to be paid in full in five years.   *Id.*, ¶¶ 8-10.   Between September 2013 and February 2014, AMR borrowed more money from Tubbs via amended and/or additional notes until AMR's total debt to Tubbs reached $22 million.   *Id.*, ¶¶ 12-15.   As additional security for the loans, Tubbs obtained a guaranty from AMR's parent company, Agspring L.L.C. ("Agspring").   *Id.*   Larry Tubbs negotiated the transactions on behalf of Tubbs, whereas Bradley Clark, then president of both AMR and Agspring, represented the two companies he headed.   *Id.*   From June 2013 until he retired in 2015, Larry Tubbs worked for AMR as CEO of its Louisiana operations.   *Id.*, ¶ 17.

NGP Energy Capital Management ("NGP") formed Agspring in 2012 to serve as a platform to acquire and consolidate agribusiness firms into a major company.   *Id.*, ¶¶ 18-21. Agspring used its wholly-owned subsidiary, AMR, to acquire Tubbs, as part of its plan to become a significant player in the global grain market.   *Id.*   By the end of 2014, however, NGP decided to sell its interest in Agspring.   *Id.*

Several companies combined resources to form and fund a limited partnership, Agspring LP ("ALP"), to serve as a vehicle to facilitate the purchase of Agspring.   *Id.*, ¶¶ 23-25. ALP's partners included American Infrastructure MLP II IP Feeder, LP; American Infrastructure MLP

Management II, L.L.C.; American Infrastructure MLP PE Management, L.L.C.; American Infrastructure MLP Yield Management, L.L.C.; and American Infrastructure MLP Funds, L.P. (collectively referred to as "AIM," or "AIM entities"); plus, Pacific Investment Management Company, L.L.C. ("PIMCO"); and Barings, L.L.C. ("Barings"). *Id.*

In December 2015, NGP sold and transferred its membership interest in Agspring to ALP. *See* Compl., ¶¶ 26-27. According to Tubbs, the sale/transfer of Agspring to ALP resulted in Agspring and AMR becoming undercapitalized because PIMCO treated its equity funding to ALP as a loan made to Agspring and its subsidiaries, including AMR. *Id.*, ¶¶ 28-33. Tubbs contends that PIMCO is pretending that it has a right to repayment of its equity funding as though it were a creditor of Agspring, when, in reality, it is an equity investor. *Id.* According to Tubbs, PIMCO disguised its equity funding to ALP as a $77.4 million term revolving loan to Agspring, which Tubbs descriptively named the "Dirty Loan," and which the court will refer to as the "Term Loan." *Id.* Tubbs alleged that Agspring received no consideration for the Term Loan because PIMCO paid the funds into ALP, which used the money to buy NGP's membership interest in Agspring. *Id.*

To secure the Term Loan, PIMCO had its agent, U.S. Bank National Association, take a security interest in all of AMR's "personal property." *Id.*, ¶ 34-36. The Term Loan thus permitted PIMCO to prioritize its equity funding payments to the detriment of Agspring and AMR's other creditors, including Tubbs. *Id.* In September 2017, ALP was converted into a newly created limited liability company, Agspring Holdco, L.L.C. ("AHL" or "Holdco"). *Id.*

According to Tubbs, PIMCO received cash and membership shares in AMR, Agspring, and AHL (sometimes collectively referred to as "Agspring entities"). *Id.*, ¶¶ 37-38. Tubbs

further believes that the payments to PIMCO on the Term Loan played a factor in Agspring and AMR's financial distress.  *Id.*[1]

On March 1, 2018, Agspring proposed to Tubbs a possible restructuring of the Agspring entities' debt, including that owed to Tubbs by AMR.  *Id.*, ¶ 46-58.   In April 2018, Mark Beemer[2] represented to Tubbs that the Agspring entities were headed for bankruptcy unless Tubbs forgave some of the debt that AMR owed them.  *Id.*   The parties held more discussions in September 2018, where*, inter alia*, Beemer advised Tubbs that the Agspring entities had a long-term debt of $97 million.  *Id.*   Tubbs also learned that PIMCO had an almost 97 percent equity interest in AMH, which was Agspring's sole member, which, in turn, owned AMR.  *Id.*

At a September 18, 2018 meeting in Louisiana, Greg Kennedy,[3] Mark Beemer, and Bruce Chapin[4] reiterated to Tubbs that since the equity interest holders were losing money in the Agspring entities, PIMCO wanted Tubbs to share in the losses by forgiving a large portion of the AMR debt.  *Id.*, ¶¶ 59-60.   Kennedy, Beemer, and Chapin cautioned Tubbs that if he did not forgive some the debt, then Agspring would file for bankruptcy.  *Id.*

Until October 1, 2018, AMR timely paid installments on the note owed to Tubbs.  *Id.*, ¶

---

[1]  In addition to AMR, Agspring is the sole member and owner of other Agspring subsidiaries. *Id.*, ¶¶ 39-44.

[2]  Mark Beemer was the CEO of Agspring, AMR, and other Agspring subsidiaries since at least January 2016.   (Compl.; ¶¶ 39-44)*.*

[3]  Greg Kennedy was a member of Agspring and AMR since at least December 2015, and AMH, since its formation.   (Compl.; ¶¶ 39-44)*.*   Kennedy also was employed by PIMCO before and after December 2015, while he was on the boards of the Agspring entities.   *Id.*

[4]  Bruce Chapin was the CFO of Agspring, AMR and other Agspring subsidiaries since at least April 2018.   (Compl.; ¶¶ 39-44).

4

62.  However, AMR made no further payments on the note after that date.  *Id.*, ¶ 64.

On October 10, 2018, Tubbs exercised his right to accelerate the due date on the note in response to AMR's failure to timely pay the note.  *Id.*, ¶¶ 65-68.  However, neither AMR, nor Agspring paid the debt or the amounts due on the note.  *Id.*, ¶¶ 68-69.  By November 2019, the balance of the note plus accrued interest totaled $25 million.  *Id.*, ¶ 95.

In January 2019, AMR recorded a deed wherein it purported to donate to Lake Providence Rice and Grain, L.L.C. (apparently incorrectly sued as "Lake Providence Grain and Rice, L.L.C.) (hereinafter, "LPRG") all of its rights, title, and interest to four tracts of immovable property located in Richland and Franklin Parishes that were appraised at $17 million in April 2018.  *Id.*, ¶¶ 146-152.  LPRG is owned or controlled by the Agspring entities.  *Id.*

Tubbs filed the instant lawsuit in September 2019 against Defendants, Greg Kennedy, Mark Beemer, PIMCO, Barings, five AIM entities, AHL, Agspring, AMR, Bruce Chapin, LPRG, and two fictitiously named insurance companies.  (Compl., ¶ 1 [doc. # 1-2]).  He requested the following relief:

    1)     judgment on the note, guarantee, mortgages, and the right to seize and sell the property;

    2)     revocation of the alleged fraudulent transfer of property to LPRG;

    3)     return of unlawful distributions from both AMR and Agspring, including asserting that the Term Loan established on the day of the sale to the PIMCO, Barings, and AIM funds was not a true loan, but an investment for which any payments were distributions subject to the rules on distributions during insolvency;

    4)     revocation of fraudulent transfers of any other assets from AMR or Agspring;

    5)     alter ego claims; and

6)      claims against officers and directors of Agspring and AMR.

[doc. # 1-2].

Following service, Defendants obtained extensions of time to answer and, thereafter, filed various exceptions.  [doc. # 1-2, pgs. 80-152, 178-196, 243-255].   The state court set the exceptions for hearing on December 11, 2020, and on February 2, 2021, denied all of the contested[5] exceptions.  *See* Reasons for Judgment; M/Abstain, Exh. A.   Prior to the hearing, Tubbs filed a motion to dismiss the five AIM entities, which the court granted on the day of the hearing.   (Dec. 11, 2020 Order [doc. # 1-2, pg. 396].   Tubbs later settled his claims against Kennedy, Beemer, and Chapin, and they were dismissed from the suit on June 23, 2021.   (June 23, 2021 Order [doc. # 1-3, pg. 286-289, 297-300]).

Meanwhile, on April 22, 2021, Tubbs filed a "Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. Art. 1915(B)(1)" ("Foreclosure Motion"), which sought to reduce the debt to judgment, recognize that the mortgages secured the judgment, and allow Tubbs to seize and sell property. [doc. # 1-2, pgs. 1-279].   The state court set the Foreclosure Motion for hearing to be held on September 13, 2021.   (May 3, 2021 Order [doc. # 1-3, pg. 281]).   The court also set the matter for a two-week jury trial to begin on August 29, 2022.   (Sched. Order [doc. # 1-3, pgs. 283-285]).[6]

---

[5] At the hearing, Tubbs conceded that the complaint did not state a viable cause of action for intentional interference with contract, and, therefore, the court dismissed that claim by separate judgment.

[6] The parties later filed a consent motion to continue the trial setting until November 15, 2022, or beyond.   [doc. # 1-4, pgs. 2-10].

6

On August 27, 2021, Agspring and AMR requested a continuance of the hearing on the Foreclosure Motion for "reasons of judicial economy and efficiency and to allow Defendants additional time for discovery."  [doc. # 1-4, pgs. 326-330].   The state court set the motion for continuance for *in-person* hearing on the same date as the hearing on the Foreclosure Motion, i.e., September 13, 2021.   (Sept. 7, 2021 Order [doc. # 1-4, pg. 371]).   The hearing(s), however, never occurred.

Instead, on September 10, 2021, one business day before the hearing(s), AMR and four affiliated debtors, including LPRG, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.   *See In re Agspring Mississippi Region LLC, et al.*, Lead Case No. 21-11238-CTG (Bankr. D. Del.).

Later that same day, the Agspring entities removed the entire state court action to this court on the grounds that it constitutes a civil proceeding arising in, arising under, or related to a case(s) under title 11, 28 U.S.C. §§ 1334 and 1452.   (Notice of Removal).   The Agspring entities explained that they intended for this court to transfer the matter to the United States District Court for the District of Delaware for ultimate referral to the United States Bankruptcy Court for the District of Delaware so the case could be heard in conjunction with the bankruptcy case(s).   (Notice of Removal).

On October 8, 2021, Tubbs filed the instant motion to abstain and remand, together with a request for an award of costs, expenses, and attorney's fees incurred as a result of the improvident removal.   [doc. # 2].   In support of the motion, Tubbs argued that the case was subject to mandatory abstention under 28 U.S.C. § 1334(c)(2) and/or permissive abstention and equitable remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b).   However, Tubbs asked the court

to defer ruling on his motion until after Delaware Bankruptcy Judge Goldblatt decided Tubbs'
contemporaneously filed motion to lift the automatic stay, which was scheduled for hearing on
November 3, 2021.   *See* M/Abstain and Remand, Memo., pgs. 11-2 and Exh. D.

On November 2, 2021, PIMCO and the Agspring entities filed separate oppositions to the
motion to abstain and remand.   [doc. #s 4-5].

On November 3, 2021, the Delaware Bankruptcy Court denied, without prejudice, Tubbs'
motion to modify the automatic stay.   *In Re: Agspring Mississippi Region, LLC*, Case No. 21-
11238 (CTG) (Bankr. Del.) (M/Transfer, Exh. C, pgs. 65-68 [doc. # 9]).

On November 8 and 9, 2021, PIMCO and the Agspring entities (plus LPRG),
respectively, filed separate motions to transfer this case to the United States District Court for the
District of Delaware for referral to the District of Delaware Bankruptcy Court.   [doc. #s 6 & 9].
PIMCO and the Agspring entities requested transfer pursuant to 28 U.S.C. § 1412.   *Id.*   PIMCO
and the Agspring entities also petitioned this court to decide the transfer motions before
resolving Tubbs' motion to abstain and remand.

Tubbs filed his reply brief in support of abstention and remand on November 9, 2021.
[doc. # 14].   The Agspring entities filed a supplemental memorandum in opposition to the
motion to abstain and remand on November 15, 2021.   [doc. # 19].   They later filed a sur-reply
on December 2, 2021.   [doc. # 46].

Meanwhile, on November 30, 2021, Tubbs filed separate memoranda in opposition to the
motions to transfer.   [doc. #s 42-43].   PIMCO and the Agspring entities filed reply briefs in
support of transfer on December 7, 2021.   [doc. #s 47-48].   PIMCO brought briefing to a close
on February 7, 2022, when it filed a supplemental memorandum in support of its motion to

transfer and in opposition to the motion to abstain and remand.  [doc. # 52].   Accordingly, the matter is ripe.

### Analysis

PIMCO and the Agspring entities urge the court to consider their motions to transfer before addressing Tubbs' motion to abstain and remand.   Generally, however, issues surrounding a court's jurisdiction should be resolved before addressing other matters.[7] Furthermore, as discussed in greater detail below, Tubbs' motion seeks not only abstention, but also remand under 28 U.S.C. § 1452(b), which provides that, "*[t]he court to which such claim or cause of action is removed* may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b) (emphasis added).   It goes without saying that this court is the court to which the cause of action was removed, and hence, by statute, is the court that is authorized to remand the cause of action on any equitable basis.   The foregoing statutory language strongly supports a finding that it is this court's responsibility to resolve issues of abstention and remand *before* determining the propriety of transfer.   *See Turbine Powered Tech. LLC v. Crowe*, Civ. Action No. 19-0475, 2019 WL 4054093, at *5 (W.D. La. Aug. 12, 2019), *R&R adopted,* 2019 WL 4058570 (W.D. La. Aug. 27, 2019) (and cases cited therein); *see also In re Chesapeake Energy Corp.*, 20-33233, 2021 WL 2258318, at *4 (Bankr. W.D. Okla. June 2, 2021) (majority

---

[7] "In the mine run of cases, jurisdiction 'will involve no arduous inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should impel the federal court to dispose of [those] issue[s] first.'"   *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436; 127 S.Ct. 1184, 1194 (2007) (citation omitted).   Of course, where jurisdiction presents a difficult decision, and *forum non conveniens* considerations weigh heavily in favor of *dismissal*, then the court may follow the path of least resistance.   *Id*.   Here, however, *forum non conveniens* factors will neither result in dismissal of the case, nor obviate the need for a court to consider the jurisdictional issues.

of courts hold that the jurisdictional issue of abstention or remand should be heard before

transfer is considered); *In re Glob. Int'l Airways Corp.*, 75 B.R. 804, 806 (W.D. Mo.1987)

(district court alone has the power to remand under § 1452(b)).   Furthermore "Section

1334(c)(2), [i.e., mandatory abstention] . . . addresses abstention by *district* courts.   *In re TXNB*

*Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (emphasis added).

In short, given the apparent statutory proscription on a transferee court's authority to

consider all of the issues raised by the motion to abstain and remand, the undersigned does not

feel at liberty to punt on this foundational matter.   *See In re Chesapeake Energy Corp., supra*

("While the "conduit" theory would provide this Court the ability to quickly 'pass the buck' . . .

the Court sees its duty otherwise and believes it should first decide the abstention/remand

issue.").   Accordingly, the court will consider the motion to abstain and remand before reaching

the motions to transfer.

## I.     Bankruptcy Jurisdiction

"A party may remove any claim or cause of action in a civil action . . . to the district court

for the district where such civil action is pending, if such district court has jurisdiction of such

claim or cause of action under section 1334 of this title."   28 U.S.C. § 1452(a).   Pursuant to 28

U.S.C. § 1334, district courts have subject matter jurisdiction over the following four types of

bankruptcy matters:

(1)     "cases under title 11";

(2)     "proceedings arising under title 11";

(3)     proceedings "arising in" a case under title 11; and

(4)     proceedings "related to" a case under title 11.

*In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) (citing 28 U.S.C. § 1334).    The first category refers to the bankruptcy petition itself.    *Id.*    The second category describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11."    *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987).    The third category is comprised of those proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."    *Wood*, 825 F.2d at 96.    These first three categories constitute "core" proceedings, which bankruptcy judges are empowered to hear and determine and to enter appropriate orders and judgments.    *See* 28 U.S.C. § 157(b); *In re Wood*, 825 F.3d at 95.    The statute does not define core proceedings but does provide a non-exclusive list of sixteen examples.    *Id.*

Finally, § 1334's fourth category, i.e., proceedings "related to" a title 11 case, are considered "non-core,"[8] and broadly defined to include disputes where "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"    *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001) (quoting *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999)).    "Certainty, or even a likelihood of such an effect is not a requirement."    *Arnold*, 278 F.3d at 434.    Thus, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."    *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995) (citations omitted).    "This test is obviously conjunctive:

---

[8] "[T]the universe of 'non-core' proceedings is co-extensive with that of 'related to' proceedings."    *In re Moore*, 739 F.3d 724, 729 n.3 (5th Cir. 2014) (citing *Stern v. Marshall*, 564 U.S. 462; 131 S.Ct. 2594, 2604-2605 (2011)); *see also* 28 U.S.C. § 157(b)(3)).

For jurisdiction to attach, the anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate." *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

Ultimately, the last three categories are considered collectively to define the jurisdictional limits of § 1334, and, consequently, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Wood*, 825 F.2d at 93.   There appears to be no legitimate dispute that Tubbs' claims are at least "related to" AMR, et al.'s bankruptcy, and, thus, that this court enjoys subject matter jurisdiction via § 1334.

## II.    Mandatory Abstention

Tubbs initially contends that this case is subject to § 1334's mandatory abstention provision which requires "the district court" to abstain from hearing non-core bankruptcy proceedings.   *In re TXNB Internal Case*, 483 F.3d at 299 (citing 28 U.S.C. § 1334(c)(2)).[9]   The Fifth Circuit has recognized that this provision requires federal court abstention where

1)  [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b);

2)  the claim is a non-core proceeding, i.e., it is related or in a case under title 11;

3)  an action has been commenced in state court; and

4)  the action could be adjudicated timely in state court.

*In re TXNB Internal Case*, *supra* (citing *Schuster v. Mims (In re Rupp & Bowman),* 109 F.3d 237, 239 (5th Cir. 1997)).

Over the course of ten-plus briefs totaling hundreds of pages, the parties collectively

---

[9]  Abstention under § 1334 applies to cases that were removed to federal court pursuant to § 1452.   *In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir. 1999).

managed to spill a prodigious amount of ink contesting whether each of Tubbs' claims is core or non-core for purposes of the present motions.   However, the Fifth Circuit has determined that so long as a complaint includes at least one core claim, then the district court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any non-core, i.e., related to, claim that forms part of the same case or controversy as the core claim.   *In re TXNB Internal Case, supra*; *see also Bankston v. Singleton*, Civ. Action No. 09-0594, 2009 WL 5196143, at *3 (W.D. La. Dec. 30, 2009).   In other words, § 1367 provides an *independent basis for the exercise of federal jurisdiction* over non-core claims, thereby negating a separate element for mandatory abstention even for these non-core claims.   *Id.*[10]

Here, all parties, and the court, agree that, at minimum, one or more of Tubbs' claims are core proceedings, and, thus, the court has jurisdiction under § 1334.   *See, e.g.*, Tubbs' suit on note against AMR (where Tubbs likely will be obliged to file a proof of claim); revocatory action against the debtors; oblique/derivative actions for distributions made by AMR to Agspring; and alter ego claim against the debtors.   (Tubbs' Reply, pgs. 9-12 [doc. # 14]); 28 U.S.C. § 157(b)(2) and *In re Maxus Energy Corp.*, 597 B.R. 235, 244 (Bankr. D. Del. 2019) (alter ego claims).   Furthermore, all of Tubbs' claims, whether core or non-core, were joined in this one suit, and there is no question that they "derive from a common nucleus of operative fact," such that they form part of the same case or controversy.[11]   *See Mendoza, supra,* and recitation of

---

[10]  The Agspring entities need not have raised § 1367 in their notice of removal.   "[I]t is well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute."   *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citation and internal quotation marks omitted).

[11]  In one of his later memoranda, Tubbs listed his claims as follows:

background facts.   Therefore, the court enjoys supplemental jurisdiction over the non-core

claims and mandatory abstention is inapplicable.   *See In re TXNB Internal Case, supra*; *Sabre*

*Techs., L.P. v. TSM Skyline Exhibits, Inc.*, Civ. Action No. 08-1815, 2008 WL 4330897, at *4

(S.D. Tex. Sept. 18, 2008) (same).[12]

The court further observes that the Delaware Bankruptcy Court has denied, albeit without

prejudice, Tubbs' motion to modify or lift the automatic bankruptcy stay, so he can pursue his

claims in this case.   While the bankruptcy court appeared amenable to revisiting this issue once

the abstention and remand issues were resolved, it is by no means a foregone conclusion that the

court would lift the stay as to all the claims asserted herein.   Consequently, Tubbs has not

established that this *action* could be timely adjudicated in state court if it were remanded.

*Bankston*, *supra*; (declining to find mandatory abstention where claims potentially subject to

automatic stay).

In short, fewer than all four elements for mandatory abstention under § 1334(c)(2) have

---

1.  Action against AMR and Agspring on the promissory note, on the guaranties, for recognition of mortgages, and right to seize and sell properties;
2.  Unfair Trade Practices Action against Agspring, AHL, PIMCO and Barings;
3.  Negligent or Bad Faith Breach of Duty of Good Faith Duty to Pay the Debt against AMR and Agspring;
4.  Declaratory Judgment, Revocatory, Oblique and Derivative Actions against AMR, LPRG, Agspring, AHL, PIMCO and Barings; and
5.  Alter Ego or Piercing the Business Entity Veil claims against AMR, Agspring, AHL, PIMCO, and Barings.

(Tubbs Opp. Brief, pg. 3 [doc. # 43]).

[12]  The court is reluctant to resolve whether all of Tubbs' claims are core, when, by statute, this is an issue delegated to the bankruptcy court.   *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.").

14

been met, and, therefore, mandatory abstention is unavailable.

## III.    Permissive Abstention and Equitable Remand

Tubbs alternatively urges the court to permissibly abstain from hearing this matter pursuant to §§ 1334(c)(1) and 1452(b).   "Under the 'permissive abstention' doctrine, 28 U.S.C. § 1334(c)(1), courts have broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'"   *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996).   Relatedly, when, as here, a claim or cause of action is removed on the basis of bankruptcy jurisdiction, "[t]he court . . . may remand such claim or cause of action on any equitable ground."   28 U.S.C. § 1452(b).   In *Browning v. Navarro*, the Fifth Circuit identified an illustrative list of eight *grounds*[13]  that support equitable remand under § 1452(b)'s predecessor statute:[14]

> (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result.

*Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984) (internal citations omitted).   Section 1334(c)(1) must be read *in pari materia* with § 1452(b).   *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 527 (5th Cir. 2015).   Therefore, the equitable grounds identified by the Fifth Circuit to support remand under § 1452(b) also guide the court's permissive abstention inquiry under § 1334(c)(1).   *See Orion Ref. Corp. v. Fluor Enterprises, Inc.*, 319 B.R. 480, 488

---

[13]   Some district courts consider up to fourteen *factors*.   *See, e.g., Sabre Techs., supra.*

[14]   *Browning* addressed ' 1478(b), which was reenacted and slightly amended as ' 1452.

(E.D. La. 2004); *Briese v. Conoco-Phillips Co.*, Civ. Action No. 08-1884, 2009 WL 256591, at *7 (W.D. La. Feb. 3, 2009) (considerations of whether to exercise discretionary abstention or to remand are the same).

Because PIMCO and the Agspring entities seek to transfer this matter to the United States District Court for the District of Delaware for ultimate referral to the United States Bankruptcy Court for that district, the undersigned's permissive abstention and equitable remand analysis must consider not only this court as a potential forum, but also the Delaware court.

Turning to the first *Browning* ground, the Supreme Court has recognized that the "common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1190 (2007) (internal quotation marks and citations omitted).[15]   When considering *forum non conveniens*, the court first must assess whether an alternate forum is both available and adequate.   *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (citation omitted).   Here, this matter was removed from the Sixth Judicial District Court for the Parish of Madison.   Consequently, there is no real dispute that the 6th JDC remains an available and adequate forum to which this matter may be returned.

The court next must assess whether, upon consideration of certain relevant private interest and public interest factors, dismissal (remand, in this case) is warranted.   *Alpine View Co., Ltd., supra*.   The private interest factors include:   (1) the relative ease of access to sources

---

[15] *See* discussion, *infra*.

of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794B95 (5th Cir. 2007) (citation omitted).   The public interest factors are comprised of:   (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.  *Id.*

The court will address the relevant considerations, seriatim.

a)    <u>Private Interest Factors</u>

i)    *Relative Ease of Access to Sources of Proof*

Some sources of proof pertaining to the underlying promissory note and guarantees undoubtedly will be located in or about Madison Parish, Louisiana.   However, other sources of proof relative to the recharacterization of the Term Loan, alleged fraudulent transfers, and alter ego claims likely will be found in Delaware, New York, Kansas, or elsewhere.

Prior to removal, Tubbs filed the Foreclosure Motion, which reflected his belief that the issues raised therein could be resolved by summary procedure, without the necessity of trial. Moreover, 6th JDC Judge Jimmie Peters set the matter for a "Live" hearing (rather than by Zoom), presumably at Tallulah, Louisiana, where the Madison Parish Courthouse is located. [doc. # 1-3, pg. 281].   In contrast, it is this court's practice to decide dispositive motions on the written record, without oral argument.   Also, Delaware Bankruptcy Judge Goldblatt mandates

that all hearings be conducted via Zoom.[16]

Furthermore, all evidence, documents, and pleadings in federal court are filed electronically.   There is no indication that the Madison Parish Clerk of Court accepts electronic filing.   Rather, its website explains that E-Filing is "coming soon!"[17]   In short, this factor ranges from neutral to favoring venue in either this court or in Delaware Bankruptcy Court.

       ii)    *Availability of Compulsory Process to Secure the Attendance of Witnesses*

In his discovery responses, Tubbs identified fourteen potential witnesses with discoverable information.   (Pl. Resp. to Interr.; Pl. Opp. Brief, Exh. A [doc. # 43-1]). According to Tubbs, five of those witnesses are in Louisiana, whereas the rest are located in Kansas or California.   *Id.*   The court observes that at least some, if not all of Tubbs' Louisiana witnesses are affiliated with Tubbs, and, therefore, likely will be inclined to make themselves available no matter where the case is tried.   The same can be said for any potential witnesses still employed by defendants.

As for other potential witnesses who are no longer affiliated with a party, and for which compulsory process may be required, Tubbs emphasized that Louisiana law permits a witness to testify remotely when he or she is beyond the subpoena power of the court.   LA. CODE CIV. P. ART. 1633.1.   However, the comments to Article 1633.1 plainly indicate that the Louisiana rule is the analog to Rule 43 of the Federal Rules of Civil Procedure, which also permits "testimony

---

[16]

https://www.deb.uscourts.gov/sites/default/files/judge/Judge%20Craig%20T.%20Goldblatt/Chambers%20Procedures%20-%20website.Final%20%28002%29.pdf (last visited on March 21, 2022).

[17]  https://madisonparishclerk.com/erecording/ (last visited on March 21, 2022).

in open court by contemporaneous transmission from a different location." Fᴇᴅ. R. Cɪᴠ. P. 43.

This factor remains neutral.

iii)    *Cost of Attendance for Willing Witnesses*

As stated above, Tubbs identified fourteen potential witnesses, five of whom reside in Louisiana.    One of the five, however, resides in Monroe, and, therefore, his cost to attend trial will be lower if venue is maintained in the present forum.    According to Tubbs, the remaining nine witnesses, i.e., almost two-thirds of his witnesses, are located in Kansas or California.    It will cost less for these remaining witnesses to attend trial in the present forum at Monroe, rather than in state court in Madison Parish, because after flying into Monroe or Jackson, Mississippi, the witnesses then must incur the additional expense associated with driving to Tallulah. Therefore, the cost of attendance for willing witnesses strongly favors maintaining the suit here, rather than Madison Parish.

Furthermore, as between this court and the Delaware Bankruptcy Court, the cost of attendance for witnesses in the latter court will be significantly lower.    The Delaware Bankruptcy Court sits in Wilmington, which is only 21 miles away from Philadelphia International Airport.    *See* Google Maps.    The court takes judicial notice of the fact that only two airlines currently serve Monroe Airport (MLU) via hubs in Atlanta and Dallas, whereas Philadelphia International Airport (PHL) has 98 non-stop, domestic destinations and is served by 19 domestic carriers with 283 domestic daily departures.[18]    Given the increased service and competition associated with PHL, it stands to reason that fares to PHL will be lower than fares to

---

[18] https://www.phl.org/about/news/fast-facts (last visited on March 22, 2022).

MLU.   Consequently, cost of attendance for willing witnesses will be considerably lower overall if venue is transferred to Delaware.   *See* discussion, *infra*.

      iv)   *All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

The court notes that collateral for the subject Note includes certain immovable and/or movable property located in northeast Louisiana.   Furthermore, the Supreme Court has recognized that the possibility of viewing the premises is an additional private interest factor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947).   However, the court does not envision that it will be necessary or beneficial for the trier of fact to view the collateral in this case.   This factor remains neutral

    b)   <u>Public Interest Factors</u>

      i)   *Administrative Difficulties Flowing from Court Congestion*

Larry Tubbs emphasizes that because of his seasoned age, Louisiana state courts will prioritize his case.   He further notes that the Louisiana Supreme Court appointed retired Judge Peters to preside over this matter in Madison Parish, and that, as a special appointee, he does not have a heavy caseload.

Prior to removal, however, Judge Peters set this matter for trial more than fifteen months out.   (Sched. Order [doc. # 1-3, pgs. 283-285]).   Moreover, Judge Peters set the Foreclosure Motion for hearing four months in the future.   (Order [doc. # 1-3, pg. 281]).   In contrast, this court typically sets initial trial dates approximately twelve months out, and trial re-settings receive dates considerably earlier than that.   Furthermore, a litigant would have to look far and wide to find another jurist who decides cases or motions that are directly referred to him on a swifter basis than Judge Doughty.

Similarly, the Delaware Bankruptcy Court held a hearing on, and decided Tubbs' motion for relief from the automatic stay within 30 days after it was filed. *See In re Agspring Mississippi Region LLC, et al.*, Lead Case No. 21-11238- CTG (Bankr. D. Del.).   Furthermore, at the hearing, the Bankruptcy Judge stated that if Tubbs were to file a proof of claim, then the dispute could be "resolved expeditiously." *See* Hearing Transcript, pg. 67 [doc. # 13-2].   Thus, this factor favors retaining the case here or transferring it to Delaware.

   ii)  *Local Interest in Having Localized Interests Decided at Home*

This factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *See In re Volkswagen AG,* 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*") (citing *Gulf Oil Corp. v. Gilbert, supra*).   Tubbs correctly noted that the state court set this matter for jury trial. However, the undersigned finds no jury demand in the amended complaint, and this court's docket sheet reflects that no party has made a jury demand.   Furthermore, it appears that at least some of the issues in this case may entail no genuine disputes as to any material fact such that one side or the other will be entitled to judgment as a matter of law. *See, e.g.*, Tubbs' Foreclosure Motion.

Even if one or more aspects of this case ultimately is submitted to a jury for decision, the Monroe Division of the Western District of Louisiana encompasses Madison Parish. Consequently, the jury venire here will include some of the same prospective jurors that the 6th JDC draws from.   Therefore, as between this court and the 6th JDC, this factor remains neutral. The court also notes that many, if not all of the Agspring entities hail from Delaware, and, thus, Delaware has a strong interest in deciding any jury issues.

21

iii & iv)    *Familiarity of the Forum with the Law That Will Govern the Case; and the Avoidance of Unnecessary Problems of Conflict of Laws [or in] the Application of Foreign Law*

As between the 6th JDC and this court, the undersigned does not discern any peculiarities or novel issues pertaining to Louisiana law which would best be left to the state court.   While Louisiana may employ unique or proprietary names to some of the causes of action asserted herein, the concepts remain relatively uniform and transcend state boundaries.   In any event, according to PIMCO, the Term Loan that forms the nexus of some of Tubbs's claims is governed by New York law.   (PIMCO Reply Memo., pg. 9).

Moreover, Tubbs's claims against defendants include allegations that they violated Delaware law and seek the return of certain Agspring entities' distributions pursuant to Delaware law.   *See* Compl., ¶¶ 141-145.   Given the overwhelming number of business entities that organize in Delaware, the Delaware Bankruptcy Court undoubtedly will be more familiar with the law pertaining to business organizations than a state or federal court sitting in Louisiana.   In fact, at the hearing on Tubbs' motion to lift the stay, the Bankruptcy Judge remarked that "the underlying dispute between the parties [was] the kind of regular commercial dispute with which bankruptcy courts grapple all the time."   (Hearing Transcript, pg. 67 [doc. # 13-2]).

Finally, the court is not aware of any unnecessary problems associated with conflict of laws that may be avoided by prosecution of this matter in any given venue.   Louisiana's conflict of laws provisions are codified and straight-forward in their application.   *See* LA. CIV. CODE ART. 3515, *et seq*.   Therefore, this factor does not favor remand and, instead, favors transfer to the Delaware Bankruptcy Court.

In sum, upon consideration of the *forum non conveniens* factors, the court finds that,

overall, they do not favor remand, and instead support transfer to the Delaware Bankruptcy Court.  *See* discussion, *infra*.

The second *Browning* ground for permissive abstention/equitable remand is inapplicable. Moreover, the undersigned already has determined that the state court is not better able to respond to state law questions, in this case.  *See* discussion, *supra*.  Also, the expertise of the Delaware Bankruptcy Court in handling disputes such as this supports maintenance of this suit in federal court and transfer to the Delaware Bankruptcy Court.

The court notes that the Delaware Bankruptcy Court already is handling some of the issues related to this case.  According to PIMCO, the Delaware Bankruptcy Court has issued findings and entered a final order that affirmed the validity of the Term Loan as a senior secured debt obligation of AMR.  *See* PIMCO Suppl Memo. [doc. # 52] (and attachments thereto). Tubbs recently appealed to the Delaware District Court the *Order (I) Extending the Debtors' Authorized Use of Cash Collateral; (II) Authorizing Payment to Term Lenders; and (III) Granting Related Relief [D.I. 290]*, entered on March 10, 2022, by the Bankruptcy Court.  *See In re Agspring Mississippi Region LLC, et al.*, Lead Case No. 21-11238- CTG [doc. # 301] (Bankr. D. Del.).  Also, LVS II SPE XVIII LLC ("LVS") and HVS V LLC ("HVS") (collectively, the "Lenders")[19] have filed an adversary proceeding against Tubbs in *In re Agspring Mississippi Region LLC, et al.*, seeking a judgment declaring, *inter alia*, that "the Lenders' valid, enforceable, and properly perfected security interest and lien in and against the

---

[19] PIMCO contends that it is not a party to the Term Loan and holds no equity in Agspring or AHL.  *See* PIMCO Reply Brief, pgs. 9-10 [doc. # 47].  Rather, it maintains that HVS and LVS are the lenders under the Term Loan, and PIMCO is an improperly named party to this action. *Id*.

Personal Property is superior to any security interest or lien Defendants may have in the Personal Property." *Id.* Needless to say, maintenance of the instant suit in state court would lead to duplicative effort and inefficient use of judicial resources in multiple forums.

The sixth *Browning* ground is prejudice to the involuntarily removed parties. The only remaining defendant in this case who did not join in the instant removal is Barings. However, Barings has not taken a position on any issue before this court. While Tubbs certainly is aggrieved by the removal, his interests have been considered in the *forum non conveniens* analysis above.

Judicial comity is defined as the principle whereby the courts of one jurisdiction will give effect to the laws and judicial decisions of another as a matter of deference and respect. *Deluxe Black's Law Dictionary*, Sixth Edition (1990). Prior to removal here, the state court judge ruled on various exceptions. However, interlocutory state court orders remain in force upon removal of a case to federal court pursuant to 28 U.S.C. § 1450. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303B04 (5th Cir.1988). Moreover, the undersigned discerns no viable basis to reconsider Judge Peters' decision. In other words, this court intends to give full deference and respect to the laws and judicial decisions of this State.

Finally, as to the eighth *Browning* ground, there is a significantly lessened possibility of an inconsistent result if this matter is retained in federal court and transferred to the Delaware Bankruptcy Court. As noted above, the Delaware Bankruptcy Court has issued certain orders regarding the characterization of the Term Loan that impacts upon issues in this case. Potentially inconsistent results can be thwarted by centralization of these matters in the Delaware Bankruptcy Court.

24

In sum, having considered all of the possible grounds for permissive abstention and equitable remand, the court finds, in its discretion, that abstention and remand are not warranted.

## IV.    Attorney's Fees and Costs

Tubbs also requested an award of attorney's fees, expenses, and/or costs under 28 U.S.C. § 1447(c).   However, having determined that remand is not warranted, the court necessarily concludes that there is no basis for an award under § 1447(c).   *See Firefighters' Ret. Sys. v. Consulting Grp. Servs., LLC*, 541 B.R. 337, 357–58 (M.D. La. 2015).

## V.    Transfer

The Agspring entities and PIMCO seek transfer pursuant to 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."   28 U.S.C. § 1412.   While courts have held that § 1412 applies to the main bankruptcy case and other core proceedings, there is a split in authority as to whether a motion to transfer a proceeding that is merely "related to" a bankruptcy action in another forum should be analyzed under 28 U.S.C. § 1404(a) rather than § 1412.   *Washington State Bank v. Turnage*, Civ. Action No. 11-0004, 2011 WL 1561440, at *3 (W.D. La. Apr. 25, 2011) (citations omitted).

Tubbs' Complaint arguably includes one or more non-core, i.e., "related to" claims, which calls into question the propriety of relying on § 1412 to support a transfer.   *See* discussion, *supra*.   The court need not resolve this issue, however, because case law provides that where, as here, this action might have been brought in the district where the bankruptcy court is located,[20] then the criteria for transfer under §§ 1404(a) and 1412 are essentially the

---

[20] This case could have been brought in the United States District Court for the District of

same.  *Washington State Bank, supra* (citations omitted); *see also* Tubbs' Opp. Memo., pgs. 10-11 [doc. # 42].

It is manifest that to obtain relief under § 1404(a), the Agspring entities and PIMCO must establish "good cause" for the transfer.  *In Re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).   To establish "good cause," the moving party must demonstrate that the transferee venue is "clearly more convenient" than the venue initially selected by the plaintiff. *Id*.   In other words, the plaintiff's choice of forum should not be disturbed unless the transferee forum is "clearly more convenient."  *Id*.   To make this determination, the court considers a number of "not necessarily exhaustive or exclusive" private and public interest factors. *Volkswagen II*, 545 F.3d at 315.   The court already has completed this exercise in the context of the permissive abstention/equitable remand analysis and determined that the Delaware Bankruptcy Court is clearly more convenient than a federal or state court in Louisiana.  *See* discussion, *supra*.

Section 1412 also includes an "interest of justice" prong, which evinces a "strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending."  *Leal v. Bednar*, Civ. Action No. 16-3424, 2017 WL 565176, at *4 (N.D. Tex. Feb. 13, 2017) (citing *LSREF2 Baron, LLC v. Aguilar*, Civ. Action No. 12-1242, 2013 WL 230381, at *5 (N.D. Tex. Jan. 18, 2013) and *Marquette Transp.*

---

Delaware because "a proceeding . . . related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a); *TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, Civ. Action No. 20-0069, 2020 WL 5066943, at *5 (N.D. Tex. Aug. 27, 2020); *Sabre Techs., supra*).   Furthermore, "other district courts have found that an action could have been brought in the same district as the bankruptcy proceeding even when the bankruptcy proceeding was filed *after* the original state action."  *TitanUrbi21, LLC, supra* (citations omitted).

*Co. v. Trinity Marine Products, Inc.*, Civ. Action No. 06-0826, 2006 WL 2349461, at *4 (E.D. La. Aug. 11, 2006)).   The most important consideration is "whether transfer would promote the economic and efficient administration of the bankruptcy estate."   *Leal, supra* (citation omitted); *Matter of Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir.1979).   Other considerations include:   "(1) the location of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) the possibility of a fair trial; (4) either forum's interest in the controversy; (5) the enforceability of any judgment obtained; and (6) the plaintiff's original choice of forum."   *Leal, supra* (citation omitted).

Applying the foregoing considerations here, the undersigned reiterates that Defendants, AMR and LPRG, have sought bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware.   Further, the Delaware Bankruptcy Court already has entered orders germane to this case, and Tubbs has appealed at least one of those orders to the Delaware District Court.   *In re Agspring Mississippi Region LLC, et al.*, [doc. # 301].   In addition, LVS and HVS have filed an adversary proceeding against Tubbs that impacts issues in this case.   Id.   While Tubbs maintains that many of his claims are non-core such that they exceed the Bankruptcy Court's statutory and/or constitutional authority,[21] this argument downplays the fact that, not unlike a magistrate judge,

> [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.   In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

---

[21] *See Stern*, *supra*.

27

28 U.S.C. § 157(c)(1).   Alternatively, upon the parties' consent and the district court's referral, the bankruptcy judge may hear and finally decide non-core matters.   28 U.S.C. § 157(c)(2).

Tubbs also argues that transfer will not prove efficient because he then will need to file a motion to withdraw the bankruptcy reference "on numerous grounds," including to uphold his Seventh Amendment right to a jury trial.   [doc. # 42].   As detailed above, however, the bankruptcy court is authorized to resolve the claims in this suit, either via proposed findings of fact and conclusions of law, or pursuant to the parties' unanimous consent and the district court's referral.   Further, insofar as Tubbs actually made a timely jury demand, *see* discussion, *supra*, the bankruptcy judge is statutorily authorized to conduct a jury trial, subject to designation by the district court and with the parties' express consent.   28 U.S.C. § 157(e); *see In re Davila Gen. Contractors, LLC*, No. 21-10090, 2022 WL 65893, at *4 (Bankr. W.D. Tex. Jan. 6, 2022) (if a party has invoked her Seventh Amendment jury trial right *and* does not consent to a jury trial in bankruptcy court, *then* the reference must be withdrawn).[22]

The undersigned further notes that, at least according to PIMCO, the Bankruptcy Court already has issued a final order confirming that the Term Loan was, in fact, a loan and not disguised equity.   If so, then principles of *res judicata* or claim preclusion may bar reconsideration of this issue in this suit.   Even if not, it is in everyone's interest to ensure that these overlapping issues are resolved consistently and uniformly.   Out of necessity, the Bankruptcy Court has taken the lead on these matters and is acquainted with them.   At this

---

[22] "[E]ven if a jury trial is ultimately necessary, immediate withdrawal of the reference is not required.   Instead, withdrawal may be deferred until the bankruptcy court has ruled on all dispositive motions, to further judicial economy and expedite the bankruptcy process." *In re Davila Gen. Contractors, LLC*, *supra*.

point, considerations of judicial economy and efficiency dictate that this matter be resolved by one court.

In the end, it cannot be stressed enough that the crux of this case is a collection action on a note in default against a debtor who has filed for bankruptcy protection.   To be sure, Tubbs has joined additional, related parties, including the guarantor, in an attempt to recover additional funds that were allegedly improperly siphoned away.   However, these issues are closely interwoven with the debtor's insolvency.   In fact, Tubbs contends that AMR, Agspring, and AHL are alter egos of PIMCO, Barings, and/or AIM, and, thus, the separate nature of these corporate entities should be disregarded.   (Compl., ¶¶ 165-171).[23]

Tubbs further argues that, given his advanced age, transfer would prove unfair.   He also urges the court to give effect to his chosen forum, which retains an interest in this controversy. However, the undersigned is not persuaded that Tubbs will go to trial more quickly if his case remains in Louisiana.   The Delaware Bankruptcy Court has stated that it can resolve these issues expeditiously.   Moreover, delays associated with the automatic stay will be ameliorated if Tubbs proceeds in that court.   While the undersigned certainly is not unsympathetic to Tubbs and his choice of forum, or blind to the fact that the timing of the bankruptcy filing gives the *appearance* that Defendants engaged in forum shopping, these considerations simply are outweighed by the countervailing circumstances of this particular case.   *See* discussion, *supra*.

In sum, the court finds that the balance of factors clearly favors transfer to the Delaware Bankruptcy Court under 28 U.S.C. §§' 1404(a) and/or 1412.

---

[23] For their part, Agspring and AHL contend that they are victims too and have joined LVS and HVS in filing suit against NGP, Randal Linville, and Bradley Clark in the Delaware Chancery Court.   *See* doc. # 1-4, pgs. 107, *et seq*.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Plaintiffs' motion to abstain and for remand, plus associated request for costs, expenses, and fees [doc. # 2], be DENIED.

IT IS FURTHER RECOMMENDED that Defendants' motions to transfer venue [doc. #s 6 & 9] be GRANTED, and that this matter be TRANSFERRED to the United States District Court for the District of Delaware for referral to the District of Delaware Bankruptcy Court.   28 U.S.C. §§ 1404(a) and/or 1412.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 4th day of April, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE